# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYRA PAREDES NINO, Individually and as Wife of Decedent Jose Alfredo Yanez Reyes; J.A.Y.P; J.R.Y.P., Minors by MAYRA PAREDES NINO, their Guardian ad Litem.<br><br>                              Plaintiffs,<br>  vs.<br>UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CUSTOMS AND BORDER PROTECTION, UNITED STATES BORDER PATROL, JANET NAPOLITANO, THOMAS S. WINKOWSKI, DAVID AQUILAR, ALAN BERSIN, KEVIN K. McALLEENAN, MICHAEL J. FISHER, PAUL A. BEESON, RICHARD BARLOW, RODNEY S. SCOTT, CHAD MICHAEL NELSON, and DORIAN DIAZ and DOES 1 through 25, inclusive,<br>                              Defendants. | CASE NO. 13cv0469 WQH (BGS)<br><br>**ORDER** |

HAYES, Judge:

      The matter before the Court is the Motion to Dismiss For Failure to State a Claim filed by Defendants United States of America, United States Department of Homeland Security, United States Customs and Border Protection, United States Border Patrol, and individually named Defendants in their official capacity ("United States"). (ECF No. 27).

## I. Background

On February 27, 2013, Plaintiffs initiated this action by filing the Complaint. (ECF No. 1). On August 26, 2013, the United States filed a Motion to Dismiss the original Complaint. (ECF No. 9). On September 25, 2013, Plaintiffs filed an opposition. (ECF No. 11). On September 26, 2013, the parties filed a Joint Motion to Amend Plaintiffs' Complaint. (ECF No. 13). On September 27, 2013, the Court granted leave to amend, and denied United States' Motion to Dismiss as moot. (ECF No. 14).

On October 4, 2013, Plaintiffs Mayra Paredes Nino, individually and as wife of Decedent Jose Alfredo Yanez Reyes, and J.A.Y.P., J.R.Y.P., minors by Mayra Paredes Nino, their Guardian ad Litem, filed the First Amended Complaint. (ECF No. 17). The First Amended Complaint alleges eight claims for relief against Defendants the United States of America, United States Department of Homeland Security, United States Customs and Border Protection, United States Border Patrol, Janet Napolitano, Thomas S. Winkowski, David Aquilar, Alan Bersin, Kevin K. McAlleenan, Michael J. Fisher, Paul A. Beeson, Richard Barlow, Rodney S. Scott, Chad Michael Nelson, Dorian Diaz, and Does 1 through 25, inclusive. *Id*. Plaintiffs' first claim for relief is for a "Violation of the Law of Nations" against the United States, the United States Department of Homeland Security, United States Customs and Border Protection, and United States Border Patrol ("United States and Federal Defendant Agencies"), under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. *Id*. ¶¶ 4-7, 24, 91-106. Plaintiffs' second claim for relief alleges a Fifth Amendment Due Process violation against the United States and Federal Defendant Agencies, as well as Defendants Napolitano, Winkowski, Aquilar, Bersin, McAlleenan, Fisher, Beeson, Barlow, and Scott ("Federal Employee Defendants"). *Id*. ¶¶ 107-115. Plaintiffs' third claim for relief alleges a Fifth Amendment Due Process violation against Defendants Nelson and Diaz. *Id*. ¶¶ 116 - 123. Plaintiffs' fourth claim for relief alleges a Fourth Amendment unreasonable seizure against the United States and Federal Defendant Agencies, as well as Federal

1  Employee Defendants. *Id.* ¶¶ 124-130. Plaintiffs' fifth claim for relief alleges a Fourth
2  Amendment unreasonable seizure against Defendants Nelson and Diaz. *Id.* ¶¶ 131-138.
3  Plaintiffs' sixth claim for relief alleges a Fifth Amendment Equal Protection violation
4  against the United States and Federal Defendant Agencies, as well as Federal Employee
5  Defendants. *Id.* ¶¶ 139-145. Plaintiffs' seventh claim for relief alleges a Fifth
6  Amendment Equal Protection violation against Defendants Nelson and Diaz. *Id.* ¶¶
7  146-151. Plaintiffs' second, third, fourth, fifth, sixth, and seventh claims for relief are
8  made pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
9  403 U.S. 388 (1971) ("*Bivens* claims"). (ECF No. 17 ¶ 23). Plaintiffs' eighth claim for
10 relief seeks declaratory and injunctive relief against Federal Employee Defendants and
11 Defendants Nelson and Diaz. *Id.* ¶¶ 152-158.
12       On November 15, 2013, the United States filed a Motion to Dismiss for Failure
13 to State a Claim and Lack of Jurisdiction Over Subject Matter pursuant to Rules
14 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 27). The
15 Motion to Dismiss was "brought by the United States, the named federal agencies, and
16 the employees sued in their official capacity only, and has not been filed on behalf of
17 the unserved, individual defendants sued in their individual capacities." (ECF No. 30
18 at 3). On December 11, 2013, Plaintiffs filed a response in opposition to the Motion to
19 Dismiss, and requested leave to amend the First Amended Complaint. (ECF No. 28).
20 On December 19, 2013, the United States filed a reply. (ECF No. 30).
21       **A.    Allegations of the First Amended Complaint**
22       At dusk on June 21, 2011, Jose Alfredo Yanez Reyes ("Yanez"), and Jose Ibarra-
23 Murrieta ("Murrieta"), crossed the border from Mexico to the United States together.
24 (ECF No. 17 ¶ 27). Yanez and Murrieta entered the United States through a hole in the
25 primary border fence abutting Mexico, and "emerged into a dried-out concrete culvert
26 between the primary border fence (the corrugated solid metal fence closest to Mexico)
27 and the secondary border fence (the high-tech chain link fence closest to the United
28 States). The culvert runs north from the primary fence to Stuart's Bridge, which abuts

the secondary fence." *Id.*

Murrieta led the pair and traversed the length of the culvert and climbed out at Stuart's Bridge. *Id.* ¶ 28. Murrieta encountered Agent Chad Michael Nelson ("Agent Nelson") at Stuart's Bridge. *Id.* Murrieta descended back into the culvert "attempting to evade" Agent Nelson and Agent Dorian Diaz ("Agent Diaz"). *Id.* Yanez, who had stayed in the culvert, escaped back into Mexico through the hole in the primary border fence. *Id.* ¶ 32. Murrieta "evaded Agent Nelson and ran south toward the primary fence where Yanez had just escaped." *Id.* ¶ 33. Agent Nelson caught Murrieta in the culvert near the primary border fence. *Id.* Murrieta and Agent Nelson "grappl[ed] for a short time." *Id.* ¶ 34. Murrieta escaped Agent Nelson's hold and in attempting to evade Agent Nelson, Murrieta tripped and fell to the ground. *Id.* ¶¶ 34-35. When Murrieta stood up, Agent Nelson "grabbed him by the neck in an attempt to subdue him." *Id.* ¶ 35. "Murrieta and Agent Nelson began grappling again in the dirt road, and Agent Nelson swept Murrieta's legs and wrestled him to the ground. Agent Nelson then "admittedly began to strike" Murrieta while pinning him to the ground." *Id.* ¶ 36. Meanwhile, "Yanez climbed into a tree that leaned against the southern side of the primary fence near where Agent Nelson and Murrieta were grappling ... Yanez was over United States Territory as he was peering over the fence to observe those events." *Id.* ¶ 37. "The Agents assert that during Nelson's struggle with Murrieta, Yanez threw two rocks (per Agent Nelson) or one or possibly two rocks (per Agent Diaz) at Agent Nelson." *Id.* ¶ 38. Agents Nelson and Diaz "assert that while Agent Nelson and Murrieta struggled on the ground, Yanez threw a nail-studded board that struck Agent Nelson in the head, glancing off his hat." *Id.* ¶ 39. "According to Agent Nelson, at about the time that Yanez allegedly threw the board, Diaz arrived to help subdue Murietta. Agent Diaz allegedly told Yanez to get off the fence, and then began helping Agent Nelson get control of Murietta." *Id.* ¶ 40.

> Agent Nelson acknowledges that then, without any warning and any further alleged throwing of a rock or a board by Yanez, Agent Nelson pulled away from the scuffle with Murrieta. Agent Diaz removed his sidearm from its holster, uttered not a single additional word, and shot

>Yanez in the head ... Yanez fell out of the tree, dead or dying, on the southern side of the primary fence, but at any event ... always within United States Territory.

*Id.* ¶ 41.

>Murrieta's account "differs markedly from those of the Agents." *Id.* ¶ 45.

>Murrieta asserts that Yanez never through [sic] anything at Nelson or anyone else. Indeed, the shape and height of the tree, the height of the primary border fence, and the distance of the tree and the fence from Agent Nelson made it impossible for Yanez (or any person) to throw rocks or wood at the agent with lethal force or accuracy.

*Id.* ¶ 46. Instead, "both Agent Nelson and Agent Diaz had Murrieta down on the ground and were beating him." *Id.* ¶ 47. In an effort to stop the attack "Yanez yelled that he was going to use his cellphone to take video and pictures of the beating." *Id.* ¶ 49. "Upon hearing Yanez's threat to record the Agents' attack on Murietta, Agent Diaz stopped beating Murietta, stood up, and, without warning or provocation, shot Yanez in the head." *Id.*

>The Agents' use of excessive, lethal force against Yanez did not spring from their spontaneous acts. Instead, they were acting pursuant to, and while implementing, a Rocking Policy that has the imprimatur of the highest-ranking DHS officials. Pursuant to this unlawful Rocking Policy, Border Patrol agents along the souther border regularly use excessive, lethal force against persons of perceived Hispanic descent and Mexican nationality.

*Id.* ¶¶ 56-57.

## II.  Contentions of the Parties

Defendants move to dismiss the First Amended Complaint on the following grounds:

>(1) The United States and federal agencies cannot be sued for constitutional torts;
>(2) The individually named [D]efendants cannot be sued for constitutional torts brought against them in their official capacities;
>(3) The United States has not waived sovereign immunity for a "Violation of the Law of Nations";
>(4) Plaintiffs have not stated a claim for injunctive relief;
>(5) Plaintiffs have not stated a claim for declaratory relief;
>(6) Mayra Paredes Nino has no standing to sue in this action; and
>(7) Plaintiffs are not entitled to attorneys' fees in this action.

(ECF No. 27-1 at 9).

Specifically, with respect to the *Bivens* claims against the United States and

1  Federal Defendant Agencies, Defendants contend that "[a] *Bivens* cause of action may
2  only be brought against government officers in their individual capacities" and that
3  "[t]his Court lacks subject matter jurisdiction over constitutional claims against the
4  United States and federal agencies." *Id*. at 11-12.  With respect the *Bivens* claims
5  against the Federal Employee Defendants, Defendants contend that "the United States
6  has not waived its sovereign immunity for suits seeking money damages under *Bivens*"
7  and that "[t]hese federal employees cannot be named as individual defendants in any
8  *Bivens* cause of action in their official capacities." *Id*. at 13.  With respect to Plaintiffs'
9  claim for "Violation of Law of Nations," Defendants contend that "Plaintiffs cannot
10 state a cause of action under the ATS, and none of the other treaties, declarations, or
11 legal norms listed in their First Amended Complaint give rise to a cause of action." *Id*.
12 at 14.

13       Plaintiffs contend that they "can recover against the named governmental entities
14 as sovereign immunity has been effectively waived." (ECF No. 28 at 10).  Plaintiffs
15 contend that the Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA") waives the
16 United States' sovereign immunity for the *Bivens* claims. *Id*. at 11.  Plaintiffs also
17 contend that the United States has waived sovereign immunity for their "Violation of
18 the Law of Nations" claim, pursuant to the Alien Tort Statute, 28 U.S.C. § 1350
19 ("ATS"). *Id*. at 12-13.  Plaintiffs contend that the ATS "applies to the facts at hand and
20 allows liability to attach to the U.S. Government." *Id*.

21 **III.    Standard of Review**

22       Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state
23 a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of
24 Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain ...
25 a short and plain statement of the claim showing that the pleader is entitled to relief.
26 Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable
27 legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v.*
28 *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to establish the court has subject matter jurisdiction over an action. *Assoc. of Medical Colleges v. United States*, 217 F.3d 770, 778-779 (9th Cir. 2000). In resolving an attack on a court's jurisdiction, the court may go outside the pleadings and consider evidence beyond the complaint relating to jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Safe Air For Everyone v. Doyle,* 373 F.3d 1035, 1039 (9th Cir. 2004). Issues regarding subject matter jurisdiction may be raised at any time, even on appeal, by motion or sua sponte by the court. Fed. R. Civ. P. 12(h)(3); *Snell v. Cleveland,* 316 F.3d 822, 826-27 (9th Cir. 2002).

## IV. Discussion

The Motion to Dismiss is "brought by the United States, the named federal agencies, and the employees sued in their official capacity only, and has not been filed on behalf of the unserved, individual defendants sued in their individual capacities." (ECF No. 30 at 3). The Court does not consider Plaintiff's claims against named Defendants in their individual capacity.

### A. *Bivens* Claims Against United States and Federal Agencies

The First Amended Complaint alleges six *Bivens* claims against the United States

and Federal Defendant Agencies. (ECF No. 17 ¶¶ 9-23, 107-151). Defendants contend that "[t]his Court lacks subject matter jurisdiction over constitutional claims against the United States and federal agencies" because sovereign immunity has not been waived. *Id*. at 11-12. Plaintiffs contend the Federal Tort Claims Act, 28 U.S.C. Section 1346(b) ("FTCA") waives the United States' sovereign immunity. (ECF No. 28 at 11). Plaintiffs contend that, "28 U.S.C. Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and 'rendered itself liable.'" *Id*. (citing *Richards v. United States*, 369 U.S. 1, 6 (1962)). Plaintiffs assert that this category includes claims: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the Government; (5) while acting within the scope of his office or employment; (6) under circumstances where the United States, as a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. *Id*. (citing 28 U.S.C. § 1356(b)). Plaintiffs contend *Bivens* claims alleged against the United States and Federal Defendant Agencies are actionable. (ECF No. 17 at ¶¶ 9-21, 107-51).

The United States, as a sovereign, is immune from suit. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "It is axiomatic that Congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States." *Roberts v. United States*, 498 F.2d 520, 525 (9th Cir. 1974). The United States "may not be sued without its consent and the terms of such consent define the court's jurisdiction." *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987). A waiver of sovereign immunity as contained in any statute "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). "A party bringing a cause of action against the federal government bears the burden of showing an unequivocal waiver of immunity." *Baker*, 817 F.2d at 562.

The United States has not waived sovereign immunity for lawsuits under

constitutional tort theories recognized in *Bivens*. "*Bivens* does not provide a means of cutting through the sovereign immunity of the United States...." *Arnsberg v. United States*, 757 F.2d 971, 980 (9th Cir. 1985). The Ninth Circuit has also recognized that the FTCA's waiver provision is limited to *state* tort-based claims. *See Delta Sav. Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001). In *Delta Savings*, the court held that the violation of a federal statute that occurred in California was not cognizable under the FTCA (even though the statute provided a private federal cause of action), because "any duty that the United States owed to plaintiffs must be found in California state law." *Id.* at 1025. The First Amended Complaint fails to show an "unequivocal waiver of immunity." *Baker*, 817 F.2d at 562.

### B.     *Bivens* Claims Against Federal Employees in Official Capacities

The First Amended Complaint alleges six *Bivens* claims against Federal Employee Defendants in their official capacities. (ECF No. 17 ¶¶ 9-23, 107-151). Defendants seek to dismiss "the 'official' capacity *Bivens* claims alleged in Plaintiffs' First Amended Complaint" on the basis that the United States "has not waived sovereign immunity for lawsuits under constitutional tort theories recognized in *Bivens*." (ECF No. 30 at 3; ECF No. 27-1 at 12).

"It has long been the rule that the bar of sovereign immunity cannot be avoided by naming officers and employees of the United States as defendants." *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949)). A suit against federal employees in their official capacities is a suit against the United States. *Id.* "[A] *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996) (quoting *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987)). The *Bivens* claims against Federal Employee Defendants in their official capacities must be dismissed.

### C.     "Violation of the Law of Nations" Claim

The First Amended Complaint alleges that the "actions and omissions [of the

United States] were the direct and proximate cause of Yanez's death and give rise to a cause of action for a tort in violation of the law of nations." (ECF No. 17 at ¶¶ 92-93). The First Amended Complaint alleges that the United States violated a number of treaties, norms, and "international and domestic strictures" which prohibit "extrajudicial killings." *Id*. at 24 - 29.

Plaintiffs contend that the "violation of the law of nations" by the United States is actionable pursuant to the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), which provides that "the district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." (ECF No. 28 at 12-13). In their Opposition to the United States' Motion to Dismiss, Plaintiffs specifically contend that the United States has violated the Treaty of Guadalupe Hidalgo, which "represents an 'international norm' actionable under the ATS." *Id*. at 13. Plaintiffs contend that the ATS "applies to the facts at hand and allows liability to attach to the U.S. Government." *Id*.

Defendants contend that none of the "treaties, declarations, and 'international and domestic strictures'" cited in the First Amended Complaint "create a private right of action against the United States." (ECF No. 27-1 at 15). Defendants further contend that "... the ATS does not constitute a waiver of sovereign immunity so as to permit suits against the United States." *Id*. at 15. Defendants contend that "the ATS is a jurisdictional statute only, creating no new causes of action. Thus, Plaintiffs cannot state a cause of action under the ATS, and none of the other treaties, declarations or legal norms listed in their First Amended Complaint give rise to a cause of action." *Id*. at 14. With respect to the Treaty of Guadalupe Hidalgo, Defendants contend that they cannot be sued under the "Treaty of Guadalupe Hidalgo" and "there has never been a waiver of sovereign immunity by Congress for such a suit." (ECF No. 30 at 5). Defendants contend that as a general rule, international treaties do not create private rights of enforcement in federal courts. *Id*.

The "[ATS] has been interpreted as a jurisdiction statute only–it has not been held

to imply any waiver of sovereign immunity." *Tobar v. United States*, 639 F.3d 1191, 1196 (9th Cir. 2011) (quoting *Goldstar (Panama) S.A. v. United States*, 967 F.2d 956, 968 (4th Cir. 1992)); *see also Industria Panificadora S.A. v. United States*, 957 F.2d 886, 887 (D.C. Cir. 1992); *Koohi v. United States*, 976 F.2d 1328, 1333 (9th Cir. 1992). The ATS creates no new causes of action. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 746 (2004). Therefore, "any party asserting jurisdiction under the [ATS] must establish, independent of that statute, that the United States has consented to suit." *Tobar*, 639 F.3d at 1196. As previously discussed, a waiver of the sovereign immunity of the United States must be "unequivocally expressed." *Franconia Assoc. v. United States*, 536 U.S. 129, 141 (2002). "[A] decision to create a private right of action is one better left to legislative judgment" and courts are reluctant to infer a private right of action unless the legislature supplies one expressly. *Sosa*, 542 U.S. at 727.

The Court finds that Plaintiffs have not established that the United States has unequivocally expressed its consent to suit pursuant to the ATS or any of the various treaties, norms, or "domestic and international strictures" cited in the First Amended Complaint. The First Amended Complaint fails to state a claim for "violation of the law of nations."

The Court does not discuss Plaintiffs' requests for declaratory or injunctive relief, or the United States' arguments as to standing, because the Court has dismissed the underlying claims.

## V. Conclusion

IT IS HEREBY ORDERED that the United States' Motion to Dismiss (ECF No. 27) is GRANTED. Plaintiffs' request for leave to amend the First Amended Complaint is granted. Plaintiffs shall file any second amended complaint within **thirty (30) days** from the date this Order is filed.

DATED: March 13, 2014

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge