UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYRA PAREDES NINO, Individually and as Wife of Decedent Jose Alfredo Yanez Reyes; J.A.Y.P; J.R.Y.P., Minors by MAYRA PAREDES NINO, their Guardian ad Litem.<br><br>Plaintiffs,<br>vs.<br>UNITED STATES OF AMERICA, and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO. 13cv0469 WQH (BGS)<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss For Failure to State a Claim filed by Defendant United States of America. (ECF No. 34).

**I.   Background**

On February 27, 2013, Plaintiffs Mayra Paredes Nino, individually and as wife of Decedent Jose Alfredo Yanez Reyes, and JY and RY, minors by Mayra Paredes Nino, their Guardian ad Litem, initiated this action by filing the Complaint. (ECF No. 1). On August 26, 2013, Defendant United States of America ("United States") filed a motion to dismiss. (ECF No. 9-1). On September 26, 2013, with the motion to dismiss pending, Plaintiffs and the United States filed a joint motion to amend the Complaint. (ECF No. 13). On October 4, 2013, Plaintiffs filed the First Amended Complaint ("FAC"). (ECF No. 17). On November 15, 2013, Defendants United States,

Department of Homeland Security ("DHS"), United States Customs and Border Protection ("CPB"), and United States Border Patrol ("Border Patrol") (collectively "Government Defendants") filed a motion to dismiss pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 27).

On March 13, 2014, the Court granted the Government Defendants' motion to dismiss. (ECF No. 32). The Court dismissed Plaintiffs' second, third, fourth, fifth, sixth, and seventh claims for relief—all brought pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens* claims")—to the extent they were brought against the Government Defendants or federal employee Defendants in their official capacities. *Id.* at 8-9. The Court found that these claims were barred by sovereign immunity because the FAC "fails to show an 'unequivocal waiver of immunity.'" *Id.* at 9 (citing *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987)). The Court also dismissed Plaintiffs' first claim for relief against the Government Defendants for violation of the law of nations on sovereign immunity grounds.

On April 14, 2014, Plaintiffs filed the Second Amended Complaint ("SAC"), which is the operative pleading. (ECF No. 33). The SAC names the United States, Agent Chad Michael Nelson ("Agent Nelson"), and Agent Dorian Diaz ("Agent Diaz") as Defendants and asserts the following claims for relief: (1) violation of the law of nations under the Alien Tort Statute ("ATS"); (2) wrongful death under the Federal Tort Claims Act ("FTCA") and California Code of Civil Procedure section 377.60-62; and (3) emotional distress under the FTCA and California Common Law. On April 28, 2014, the United States filed the Motion to Dismiss. (ECF No. 34). On May 12, 2014, Plaintiffs filed an opposition, along with the Declaration of Attorney Eric M. Welch. (ECF Nos. 35, 35-1). On May 20, 2014, the United States filed a reply. (ECF No. 36).

**II.  Allegations of the SAC**

At dusk on June 21, 2011, Jose Alfredo Yanez Reyes ("Yanez"), and Jose Ibarra-Murrieta ("Murrieta"), crossed the border from Mexico to the United States together.

1  (ECF No. 33 at 4). Yanez and Murrieta entered the United States through a hole in the
2  primary border fence abutting Mexico, and "emerged into a dried-out concrete culvert
3  between the primary border fence (the corrugated solid metal fence closest to Mexico)
4  and the secondary border fence (the high-tech chain link fence closest to the United
5  States). The culvert runs north from the primary fence to Stuart's Bridge, which abuts
6  the secondary fence." *Id*.

7  Murrieta led the pair and traversed the length of the culvert and climbed out at
8  Stuart's Bridge. *Id.* at 5. Murrieta encountered Agent Nelson at Stuart's Bridge. *Id.*
9  "Murrieta leapt back into the culvert and began scaling a pole up the side of Stuart's
10 Bridge." *Id.* Yanez, who had stayed in the culvert, escaped back into Mexico through
11 the hole in the primary border fence. Murrieta "evaded Agent Nelson and ran south
12 toward the primary fence where Yanez had just escaped." *Id*. Agent Nelson caught
13 Murrieta in the culvert near the primary border fence. Murrieta and Agent Nelson
14 "grappl[ed] for a short time." *Id.* Murrieta escaped Agent Nelson's hold and in
15 attempting to evade Agent Nelson, Murrieta tripped and fell to the ground. "When
16 Murrieta stood up, Agent Nelson grabbed him by the neck in an attempt to subdue him."
17 *Id*. "Murrieta and Agent Nelson began grappling again in the dirt road, and Agent
18 Nelson swept Murrieta's legs and wrestled him to the ground. Agent Nelson then
19 admittedly began to strike Murrieta while pinning him to the ground." *Id*. "Meanwhile,
20 Yanez climbed into a tree that leaned against the southern side of the primary fence near
21 where Agent Nelson and Murrieta were grappling ... Yanez was over United States
22 Territory as he was peering over the fence to observe those events." *Id.* at 5-6.

23 From this point forward, the FAC recounts both the Agents' and Murrieta's
24 versions of the events. "The Agents assert that during Nelson's struggle with Murrieta,
25 Yanez threw two rocks (per Agent Nelson) or one or possibly two rocks (per Agent
26 Diaz) at Agent Nelson." *Id.* at 6. Agents Nelson and Diaz "assert that while Agent
27 Nelson and Murrieta struggled on the ground, Yanez threw a nail-studded board that
28 struck Agent Nelson in the head, glancing off his hat." *Id.* "According to Agent

1  Nelson, at about the time that Yanez allegedly threw the board, Diaz arrived to help
2  subdue Murrieta.  Agent Diaz allegedly told Yanez to get off the fence, and then began
3  helping Agent Nelson get control of Murietta." *Id.*

> Agent Nelson acknowledges that then, without any warning and any further alleged throwing of a rock or a board by Yanez, Agent Nelson pulled away from the scuffle with Murrieta.  Agent Diaz removed his sidearm from its holster, uttered not a single additional word, and shot Yanez in the head ... Yanez fell out of the tree, dead or dying, on the southern side of the primary fence, but at any event ... always within United States Territory.

*Id.*

Murrieta's account "differs markedly from those of the Agents." *Id.* at 7.

> Murrieta asserts that Yanez never through [sic] anything at Nelson or anyone else.  Indeed, the shape and height of the tree, the height of the primary border fence, and the distance of the tree and the fence from Agent Nelson made it impossible for Yanez (or any person) to throw rocks or wood at the agent with lethal force or accuracy.

*Id.* "Instead, both Agent Nelson and Agent Diaz had Murrieta down on the ground and were beating him." *Id.* at 8. "In an effort to stop the attack, Yanez yelled that he was going to use his cellphone to take video and pictures of the beating." *Id.* at 8. "Upon hearing Yanez's threat to record the Agents' attack on Murietta, Agent Diaz stopped beating Murietta, stood up, and, without warning or provocation, shot Yanez in the head." *Id.*

> The Agents' use of excessive, lethal force against Yanez did not spring from their spontaneous acts.  Instead, they were acting pursuant to, and while implementing, a Rocking Policy that has the imprimatur of the highest-ranking DHS officials.  Pursuant to this unlawful Rocking Policy, Border Patrol agents along the southern border regularly use excessive, lethal force against persons of perceived Hispanic descent and Mexican nationality.

*Id.* at 9.  The United States knew or reasonably should have known that Border Patrol Agents had implemented the Rocking Policy, tacitly approved the Rocking Policy, defended the Rocking Policy, and failed to adequately train Border Patrol agents "concerning the proper use of force." *Id.* at 9-10, 19.

**III. Contentions of the Parties**

The Motion to Dismiss is brought by the United States. The United States moves

to dismiss the SAC on the following grounds:

> (1) Plaintiffs' First Claim for "Violation of the Law of Nations" has already been dismissed by this Court based on sovereign immunity;
>
> (2) Plaintiffs' Second and Third Claims under the Federal Tort Claims Act (FTCA) are time-barred;
>
> (3) Plaintiffs' requests for declaratory and injunctive relief are barred as there is no real and substantial controversy and Plaintiffs are seeking an improper advisory opinion; and
>
> (4) Plaintiffs' request for attorney's fees should be dismissed as unrecoverable.

(ECF No. 34-1 at 2). In addition, the United States "incorporates by reference herein its foreign country exception argument raised in its first motion to dismiss[,]" namely, that tort claims are barred against the United States when "based on injuries suffered in foreign countries." *Id.*

Plaintiff contends that it may bring an ATS claim against the United States. Plaintiff contends that the FTCA claims of the SAC relate back to the time of the filing of the original Complaint. Plaintiff also contends that declaratory and injunctive relief are proper remedies to stop the alleged "Rocking Policy." (ECF No. 35 at 9). Finally, Plaintiff contends that attorneys' fees are recoverable pursuant to 42 U.S.C. section 1988.

## IV. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief. Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to establish the court has subject matter jurisdiction over an action. *Assoc. of Med. Colls. v. United States*, 217 F.3d 770, 778-779 (9th Cir. 2000). In resolving an attack on a court's jurisdiction, the court may go outside the pleadings and consider evidence beyond the complaint relating to jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Safe Air For Everyone v. Doyle,* 373 F.3d 1035, 1039 (9th Cir. 2004). Issues regarding subject matter jurisdiction may be raised at any time, even on appeal, by motion or sua sponte by the court. Fed. R. Civ. P. 12(h)(3); *Snell v. Cleveland,* 316 F.3d 822, 826-27 (9th Cir. 2002).

**V. Violation of the Law of Nations (First Claim)**

The United States contends that Plaintiffs' violation of the law of nations claim is identical to the violation of the law of nations claim contained in the FAC, which the Court dismissed in its March 13, 2014 Order for failing to state a claim. Plaintiffs contend that the "extrajudicial killing" alleged in the SAC is "among the gravest violations of the law of nations." (ECF No. 35 at 8). Plaintiffs contend that the ATS provides for a cause of action for a violation of the law of nations. Plaintiffs assert that they have "spelled out in detail within the SAC" the "statutes, treaties and conventions which apply to this case." *Id.*

The United States, as a sovereign, is immune from suit. *United States v. Mitchell*,

445 U.S. 535, 538 (1980). "It is axiomatic that Congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States." *Roberts v. United States*, 498 F.2d 520, 525 (9th Cir. 1974). The United States "may not be sued without its consent and the terms of such consent define the court's jurisdiction." *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987). A waiver of sovereign immunity as contained in any statute "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). "A party bringing a cause of action against the federal government bears the burden of showing an unequivocal waiver of immunity." *Baker*, 817 F.2d at 562. A waiver of the sovereign immunity of the United States must be "unequivocally expressed." *Franconia Assoc. v. United States*, 536 U.S. 129, 141 (2002).

The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The "[ATS] has been interpreted as a jurisdiction statute only–it has not been held to imply any waiver of sovereign immunity." *Tobar v. United States*, 639 F.3d 1191, 1196 (9th Cir. 2011) (quoting *Goldstar (Panama) S.A. v. United States*, 967 F.2d 956, 968 (4th Cir. 1992)); *see also Koohi v. United States*, 976 F.2d 1328, 1333 n.4 (9th Cir. 1992); *Industria Panificadora S.A. v. United States*, 957 F.2d 886, 887 (D.C. Cir. 1992). Therefore, "any party asserting jurisdiction under the [ATS] must establish, independent of that statute, that the United States has consented to suit." *Tobar*, 639 F.3d at 1196.

The SAC's sections titled "International and Domestic Strictures on Excessive, Lethal Force" and "Applicable Treaties" are identical to those contained in the FAC. The SAC alleges that the "Rocking Policy" violates the law of nations, which prohibits extrajudicial killing, and that the United States "is liable for Yanez's death under the law of nations, because it formulated, authorized, approved, directed, and ratified the Rocking Policy." (ECF No. 33 at 26-27). The SAC does not allege, nor do Plaintiffs contend in opposition, that the United States has waived its sovereign immunity under

the ATS.

For the reasons given in the Court's March 13, 2014 Order, Plaintiffs have failed to state a claim against the United States for a violation of the law of nations in the SAC. The United States' motion to dismiss Plaintiff's first claim for violation of the law of nations is granted.

Plaintiffs have made no attempt to cure the pleading deficiencies identified in the Court's March 13, 2014 Order. Plaintiffs do not contend that the United States has waived its sovereign immunity for violations of the law of nations. Controlling case law is clear that the United States has not waived its sovereign immunity under the ATS. Because amendment would be futile, dismissal is with prejudice.

**VI. FTCA Statute of Limitations (Second and Third Claims)**

The United States contends that Plaintiffs failed to bring FTCA claims within six months of the denial of an administrative claim, as required by 28 U.S.C. § 2401(b). The United States asserts that Plaintiffs' administrative claim was denied on August 27, 2012, but Plaintiffs did not bring FTCA claims until April 14, 2014, the date the SAC was filed. The United States contends that Plaintiffs cannot rely on the date of the original Complaint, filed February 27, 2013, because Plaintiffs did not assert FTCA claims in the FAC.

Plaintiffs contend that the SAC's FTCA claims "relate back" to the filing of the Complaint because they arise from the same general set of facts as the original pleading. Plaintiffs assert that they did not voluntarily dismiss the FTCA claims alleged in the original Complaint. Plaintiffs' counsel Eric Welch states that, "[a]fter consulting with Perez' counsel [in related case *Perez v. United States, et al.*, Southern District of California, Case No. 13cv1417] and upon reviewing applicable law involving *Bivens* claims and the Judgment Bar which would operate to bar application of both *Bivens* and the FTCA within the same case, I had opted to follow a *Bivens* approach in the First Amended Complaint (FAC)." (ECF No. 35-1 at 2).

In reply, the United States contends that Plaintiffs are not permitted to engage in

an "alternative pleading strategy" which allows Plaintiffs to "resurrect" the original Complaint in the SAC after pursuing different claims in the FAC. (ECF No. 36 at 4). The United States contends that "an amended complaint supersedes a previous complaint and constitutes a waiver of the claims listed in the previous complaint." *Id.* at 4 (citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987)).

### A. "Abandoned" or "Waived" Claims

In *Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997), the U.S. Court of Appeals for the Ninth Circuit held that claims dismissed pursuant to Rule 12(b)(6) were waived on appeal after the plaintiff failed to reallege them in an amended complaint. *Id.* at 1474. In *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012), the Court of Appeals partially overruled *Forsyth* and held that a plaintiff is not required to reallege a claim in an amended complaint that was "dismissed with prejudice and without leave to amend." *Id.* at 928.

In opposition to the Government Defendants' Motion to Dismiss the FAC, Plaintiffs requested that "[i]n the event that this Court rules for Defendants, then Plaintiffs seek the right to amend their Complaint, specifically to allege FTCA causes of action as justified by the facts (and in the event that such are not subject to the 'judgment bar' so as to invoke claim preclusion)." (ECF No. 28 at 21). In reply, the Government Defendants opposed the addition of an FTCA claim, contending that Plaintiffs abandoned their FTCA claim in the FAC after being faced with a motion to dismiss the original Complaint. (ECF No. 30 at 9). In the March 13, 2014 Order, the Court granted Plaintiffs' request for leave to amend the First Amended Complaint without qualification. (ECF No. 32 at 11).

Although claims may be waived for the purposes of an appeal when not realleged in the operative complaint, *see Forsyth*, 114 F.3d at 1474; *Lacey*, 693 F.3d at 928, the United States has cited no authority for the proposition that a district court may not permit a plaintiff to "resurrect" claims alleged in an original complaint that are not realleged in a first amended complaint. Furthermore, nothing in the record evinces an

intent to abandon FTCA claims. Eric M. Welch, Plaintiffs' counsel, opted to test the sufficiency of a *Bivens* action instead of an FTCA action in the FAC in order to avoid the potential FTCA judgment bar. (ECF No. 35-1 at 2); *see also Gasho v. United States*, 39 F.3d 1420, 1436-38 (9th Cir. 1994) ("[A]*ny* FTCA judgment, regardless of its outcome, bars a subsequent *Bivens* action on the same conduct that was at issue in the prior judgment.") (emphasis in original). The decision to omit FTCA claims from the FAC was part of a broader pleading strategy in which FTCA claims were a part of. The fact that FTCA claims were asserted in the SAC further demonstrates an intent to pursue FTCA claims. The Court does not construe Plaintiffs' successive complaints as having abandoned Plaintiffs' FTCA claims.

### B. Relation Back to the Original Complaint

Federal Rule of Civil Procedure 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when.... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading...." Fed. R. Civ. P. 15(c)(1)(B). "Claims arise out of the same conduct, transaction, or occurrence if they 'share a common core of operative facts' such that the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (citing *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325-26 (9th Cir. 1989)). "The requirement that the allegations in the amended complaint arise from the same conduct, transaction, or occurrence is meant to ensure that the original pleading provided adequate notice of the claims raised in the amended pleading." *Williams*, 517 F.3d at 1133 n.9.

In this case, the original Complaint and the SAC arise out of the alleged shooting of Yanez in response to alleged rock throwing. Both complaints name the United States as a defendant. The United States does not contend that it was without notice of the claims against it until the filing of the SAC.

The FTCA claims asserted in the SAC relate back to the date the original Complaint was filed on February 27, 2013 because the claims arise for the exact same

1 "conduct, transaction, or occurrence": the shooting of Yanez. Fed. R. Civ. P. 15(c)(1)(B). The fact that Plaintiffs filed an FAC in the interim does not limit the application of Rule 15. *See Baker v. Major League Baseball Properties, Inc.*, No. 3:09-CV-00982, 2012 WL 2564905, at *2 (S.D. Cal. July 2, 2012) (finding that a proposed fifth amended complaint satisfied Rule 15(c)(1)(B) because "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out ... in the original pleading") (citing Fed. R. Civ. P. 15(c)(1)(B)). Because Plaintiffs' administrative claim was denied on August 27, 2012, Plaintiffs timely filed the present action within six months on February 27, 2013. (ECF No. 34-1 at 5; ECF No. 1).

The United States' motion to dismiss Plaintiffs' Second and Third Claims under the FTCA is denied.

**VII. Injunctive Relief**

The United States contends that Plaintiffs do not have standing to seek injunctive relief to enjoin future execution of the "Rocking Policy" because Plaintiffs seek redress for an alleged past wrong but do not allege any facts demonstrating that Plaintiffs face the threat of future injury. (ECF No. 34-1 at 8-9) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). The United States contends that even if Plaintiffs "were to allege in this action that at some point in the future, they plan to illegally cross the border through a small hole in the international border fence and throw rocks and nail-studded wood boards at border patrol agents, they cannot possibly predict what will happen if they choose to do so." *Id.* at 9. Plaintiffs contend that the specific policy they have alleged, the "Rocking Policy," must be enjoined to prevent those similarly situated to Yanez from being harmed pursuant to the "Rocking Policy." (ECF No. 35 at 9).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The party

invoking federal jurisdiction bears the burden of establishing Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This party must establish (1) an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) 'actual or imminent, not conjectural or hypothetical,'" (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Id.* at 560-61 (citations omitted). "Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (citations omitted). "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

The SAC alleges that "[a]bsent a revocation and prohibition of Defendants' policies, practices, and patterns as well as the implementation of affirmative policies, practices, and procedures ensuring compliance with the requirements of law, many other persons remain at risk of being the next victims of extrajudicial killings at the hands of U.S. Border Patrol agents." (ECF No. 33 at 30). The SAC requests injunctive relief, enjoining the United States from, *inter alia*, "continuing to authorize and implement the Rocking Policy," "deeming others' throwing of rocks at agents to be per se lethal force that, in turn, justifies the agents' counter-use of lethal force against those others," and "expressly or implicitly approving the Rocking Policy by any means...." *Id.* at 31.

The Court concludes that the facts alleged in the SAC are not sufficient to demonstrate Plaintiffs' standing to seek an injunction. Plaintiffs do not allege that they have "sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Lyons*, 461 U.S. at 102, 105-10 (holding that a plaintiff lacked standing to seek an injunction preventing an allegedly unlawful police

practice absent an allegation that he would have another encounter with police officers, even though the plaintiff presumably had "standing to claim damages against the individual officers").

The United States' motion to dismiss Plaintiffs' request for injunctive relief is granted.

## VIII. Declaratory Relief

The United States contends that Plaintiffs' request for declaratory relief must be dismissed because Plaintiffs fail to "articulate what they seek at this time." (ECF No. 34-1at 10). Plaintiffs contend that the constitutionality of the "Rocking Policy" is brought "front and center" throughout the body of the SAC. (ECF No. 35 at 9).

The content of the SAC's requested declaratory relief is identical to its requested injunctive relief. Both requests seek to prevent future execution of the "Rocking Policy." As discussed above, Plaintiffs lack standing to seek to prevent future conduct without alleging that Plaintiffs, personally, are "immediately in danger of sustaining some direct injury" as a result of the "Rocking Policy." *Lyons*, 461 U.S. at 101-02 (1983).

The United States' motion to dismiss Plaintiffs' request for declaratory relief is granted.

## IX. Attorneys' Fees

The United States contends that it has not waived sovereign immunity for attorneys' fees for either FTCA or violation of the law of nations actions. Plaintiffs contend that 42 U.S.C. § 1988 authorizes an award of attorneys' fees in this case.

42 U.S.C. section 1988(b) provides that "in any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

Section 1988(b) cannot provide the basis for the recovery of attorney's fees against the United States. Section 1988(b) only applies to actions brought under 42

U.S.C. sections 1981, 1981a, 1982, 1983, 1985, and 1986, none of which are asserted as claims for relief in the SAC.

Because the Court has dismissed Plaintiffs' violation of the law of nations claim, Plaintiffs may not recover attorneys' fees for a violation of the law of nations. Plaintiffs may not recover attorneys' fees against the United States under the FTCA because "Congress has not waived the government's sovereign immunity for attorneys' fees and expenses under the FTCA." *Anderson v. United States*, 127 F.3d 1190, 1191-92 (9th Cir. 1997).

The United States' motion to dismiss Plaintiffs' request for attorneys' fees against the United States is granted.

**X. Foreign Country Exception**

The United States "incorporates by reference herein its foreign country exception argument raised in its first motion to dismiss[,]" namely, that tort claims are barred against the United States when "based on injuries suffered in foreign countries." (ECF No. 34-1 at 2). The Court finds that this argument has not been properly raised in the present motion to dismiss. The United States raises no contentions specific to the SAC, the operative pleading. The motion to dismiss is denied without prejudice as to the United States' arguments regarding the "foreign country exception."

/ / /

**XI.   Conclusion**

IT IS HEREBY ORDERED that the United States' Motion to Dismiss (ECF No. 34) is GRANTED in part and DENIED in part.  Plaintiffs' First Claim for violation of the law of nations is DISMISSED with prejudice.  Plaintiffs' requests for injunctive relief and declaratory relief are DISMISSED.  Plaintiffs' request for attorneys' fees against the United States is DISMISSED.

DATED: October 6, 2014

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge