# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYRA PAREDES NINO, Individually and as Wife of Decedent Jose Alfredo Yanez Reyes; JY and RY, Minors by MAYRA PAREDES NINO, their Guardian ad Litem.<br><br>　　　　　　　　　　Plaintiffs,<br>　vs.<br>UNITED STATES OF AMERICA, and DOES 1 through 25, inclusive,<br><br>　　　　　　　　　　Defendants. | CASE NO. 13cv0469 WQH (BGS)<br><br>**ORDER** |

HAYES, Judge:

　　The matter before the Court is the Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 43) filed by Defendant United States of America.

## I. Background

　　On February 27, 2013, Plaintiffs Mayra Paredes Nino ("Nino"), individually and as wife of Decedent Jose Alfredo Yanez Reyes ("Yanez"); and JY and RY, minors by Plaintiff Nino, their Guardian *ad Litem*, initiated this action by filing the Complaint. (ECF No. 1). On April 14, 2014, Plaintiffs filed the Second Amended Complaint ("SAC"), which is the operative pleading in this case. (ECF No. 33). The SAC names the United States as a Defendant and asserts the following claims for relief: (1) violation of the law of nations under the Alien Tort Statute ("ATS"); (2) wrongful death under the Federal Tort Claims Act ("FTCA") and California Code of Civil Procedure section

377.60-62; and (3) emotional distress under the FTCA and California Common Law. On April 28, 2014, Defendant United States filed a motion to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 34).

On October 6, 2014, the Court issued an Order granting in part and denying in part Defendant's motion to dismiss. (ECF No. 37). The Court dismissed Plaintiffs' violation of the law of nations claim and Plaintiffs' requests for injunctive relief, declaratory relief, and attorneys' fees. The Court denied Defendant's motion to the extent Defendant sought dismissal for lack of subject matter jurisdiction based on the Federal Tort Claims Act's ("FTCA") foreign country exception.[1] The Court found that the foreign country exception contentions had "not been properly raised in the present motion to dismiss" and that Defendant "raises no contentions specific to the SAC, the operative pleading." *Id.* at 14.

On December 16, 2014, Defendant filed the Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 43). On January 3, 2015, Plaintiffs filed an opposition, wherein Plaintiffs requested a continuance and opportunity to counter evidence submitted by Defendant. (ECF No. 44). On January 11, 2015, Defendants filed a reply. (ECF No. 46).

On January 16, 2015, the Court issued an Order, allowing Plaintiffs' to file an opposition with supporting evidence. (ECF No. 47). On February 2, 2015, Plaintiffs filed a supplemental opposition. (ECF No. 48). On February 9, 2015, Defendant filed a reply with evidence (ECF No. 49), accompanied by a request to submit evidence with the reply brief (ECF No. 50). On February 27, 2015, the Court heard oral argument on the Motion to Dismiss Plaintiffs' Second Amended Complaint. (ECF No. 52).

On March 6, 2015, the Court issued an Order granting in part and denying in part the Motion to Dismiss Plaintiffs' Second Amended Complaint. (ECF No. 53). The Court denied Defendant's motion to the extent Defendant sought dismissal of Plaintiff

---

[1] The FTCA's foreign country exception provides: "The provisions of this chapter and section 1346(b) of this title shall not apply to ... [a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k).

Nino's claims as an individual or guardian *at litem* to Plaintiffs JY and RY. The Court dismissed the SAC to the extent Plaintiff Nino asserted claims as legal wife of Yanez. The Court granted Plaintiffs thirty days to file a motion for leave to amend the SAC. The docket reflects that Plaintiffs have not filed a motion for leave to amend the SAC to date.

The Court deferred ruling on issues related to the foreign country exception. The Court granted the parties ninety days of jurisdictional discovery "in order to address factual issues relevant to jurisdiction in light of the foreign country exception to the FTCA." *Id.* at 9. The Court requested that jurisdictional discovery be followed by supplemental briefing on the following issues: (1) application of the foreign country exception in this case; (2) whether the jurisdictional issues related to the foreign country exception are intertwined with factual issues going to the merits; (3) what standard applies if the facts are intertwined; and (4) what standard applies if the facts are not intertwined.

On June 22, 2015, Defendant filed a supplemental brief in support of the motion to dismiss. (ECF No. 54). On July 14, 2015, Plaintiffs filed a response to Defendant's supplemental brief. (ECF No. 56). On July 30, 2015, Defendant filed a reply in support of its supplemental brief. (ECF No. 60).

**II. Allegations of the SAC**

At dusk on June 21, 2011, Yanez and Jose Ibarra-Murrieta ("Murrieta") crossed the border from Mexico to the United States together. (ECF No. 33 at 4). Yanez and Murrieta entered the United States through a hole in the primary border fence abutting Mexico, and "emerged into a dried-out concrete culvert between the primary border fence (the corrugated solid metal fence closest to Mexico) and the secondary border fence (the high-tech chain link fence closest to the United States). The culvert runs north from the primary fence to Stuart's Bridge, which abuts the secondary fence." *Id*.

Murrieta led the pair and traversed the length of the culvert and climbed out at Stuart's Bridge. *Id.* at 5. Murrieta encountered Agent Nelson at Stuart's Bridge. *Id.*

"Murrieta leapt back into the culvert and began scaling a pole up the side of Stuart's Bridge." *Id.* "Agent Nelson, who had chased Murrieta into the culvert, yelled to Agent Diaz, who was already at the top of Stuart's Bridge, to cut off Murrieta's escape." *Id.*

Yanez, who had stayed in the culvert, escaped back into Mexico through the hole in the primary border fence. Murrieta "evaded Agent Nelson and ran south toward the primary fence where Yanez had just escaped." *Id.* Agent Nelson caught Murrieta in the culvert near the primary border fence. Murrieta and Agent Nelson "grappl[ed] for a short time." *Id.* Murrieta escaped Agent Nelson's hold and in attempting to evade Agent Nelson, Murrieta tripped and fell to the ground. "Murrieta and Agent Nelson began grappling again in the dirt road, and Agent Nelson swept Murrieta's legs and wrestled him to the ground." *Id.* "Meanwhile, Yanez climbed into a tree that leaned against the southern side of the primary fence near where Agent Nelson and Murrieta were grappling ... Yanez was over United States Territory as he was peering over the fence to observe those events." *Id.* at 5-6.

From this point forward, the FAC recounts both the Agents' and Murrieta's versions of the events. "The Agents assert that during Nelson's struggle with Murrieta, Yanez threw two rocks (per Agent Nelson) or one or possibly two rocks (per Agent Diaz) at Agent Nelson." *Id.* at 6. Agents Nelson and Diaz "assert that while Agent Nelson and Murrieta struggled on the ground, Yanez threw a nail-studded board that struck Agent Nelson in the head, glancing off his hat." *Id.* "According to Agent Nelson, at about the time that Yanez allegedly threw the board, Diaz arrived to help subdue Murrieta. Agent Diaz allegedly told Yanez to get off the fence, and then began helping Agent Nelson get control of Murietta." *Id.*

> Agent Nelson acknowledges that then, without any warning and any further alleged throwing of a rock or a board by Yanez, Agent Nelson pulled away from the scuffle with Murrieta. Agent Diaz removed his sidearm from its holster, uttered not a single additional word, and shot Yanez in the head ... Yanez fell out of the tree, dead or dying, on the southern side of the primary fence, but at any event ... always within United States Territory.

*Id.*

> Murrieta's account "differs markedly from those of the Agents." *Id.* at 7.
>
> Murrieta asserts that Yanez never through [sic] anything at Nelson or anyone else. Indeed, the shape and height of the tree, the height of the primary border fence, and the distance of the tree and the fence from Agent Nelson made it impossible for Yanez (or any person) to throw rocks or wood at the agent with lethal force or accuracy.

*Id.* "Instead, both Agent Nelson and Agent Diaz had Murrieta down on the ground and were beating him." *Id.* at 8. "In an effort to stop the attack, Yanez yelled that he was going to use his cellphone to take video and pictures of the beating." *Id.* "Upon hearing Yanez's threat to record the Agents' attack on Murietta, Agent Diaz stopped beating Murietta, stood up, and, without warning or provocation, shot Yanez in the head." *Id.*

"Although Yanez was shot while a portion of his body was located on the southern side of the primary fence, his entire body was well within United States' territory when he was killed. The international boundary passes just a few feet south of where Yanez was located when the fatal bullet struck him; the primary fence and the tree in which Yanez was standing were located just north of the international boundary." *Id.* at 29. "Yanez' wife was pregnant with their second child and witnessed the event from a very close distance while she was against the border fence near her husband. She was holding her eldest son, who also witnessed the shooting." *Id.* at 28. "Plaintiff Mayra and her children were also within the United States boundary at the time that Yanez were [sic] killed. They witnessed the horrific scene while standing upon 'U.S. Soil'." *Id.* at 29.

**III. Discussion**

Defendant moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiffs' claims arise in Mexico and the foreign country exception bars Plaintiffs' claims. Defendant contends that Plaintiffs' "wrongful death claims" are barred by the foreign country exception because Yanez died on Mexican soil. (ECF No. 43-1 at 10). Defendant contends that "any claims by Plaintiffs under a bystander theory" are barred by the foreign country exception because Plaintiffs

did not witness Yanez's death while standing on United States soil. *Id.* at 13. Plaintiffs contend that Yanez was killed on American soil and assert that they witnessed Yanez's death from American soil.

### A. 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to establish that the court has subject matter jurisdiction over an action. *Assoc. of Med. Colls. v. United States,* 217 F.3d 770, 778-779 (9th Cir. 2000).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003); *see also Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 686 (7th Cir. 1998) ("The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question. At that point, a court need not close its eyes to demonstrated jurisdictional deficiencies in a plaintiff's case and accord a plaintiff's unproven allegations greater weight than substantive evidence to the contrary.").

"[I]f a plaintiff's proof (of jurisdictional facts) is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.'" *Societe de Conditionnement en*

*Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 942 (9th Cir. 1981) (quoting *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.3d 1280, 1285 (9th Cir. 1977)).[2] The Ninth Circuit has described this standard as equivalent to the summary judgment standard. *See Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987) ("The requirement that the nonmoving party present evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists.") (citations omitted). Generally, a court has discretion to resolve factual disputes on a factual motion to dismiss for lack of subject matter jurisdiction. *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("The district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes.").

However, where factual jurisdictional issues are intertwined with factual questions going to the merits, a court may not decide those factual issues on a Rule 12(b)(1) motion. *See Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 140-41 (9th Cir. 1983) (holding that the district court erred in making a factual finding and dismissing a claim under Rule 12(b)(1), where the factual jurisdictional issue was intertwined with the merits). "The question of jurisdiction and the merits of an action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" *Safe Air for Everyone*, 373 F.3d at 1039 (citation omitted). Jurisdiction and the merits are also intertwined where the factual jurisdictional issue goes to an element of the

---

[2] *Data Disc* established the standard for factual Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction. In *Data Disc*, the Court of Appeals further held that a district judge need not weigh conflicting affidavits on a 12(b)(2) motion because "the district judge [generally] has no basis for a determination of credibility." *Data Disc*, 557 F.3d at 1284. *Hunter Engineering* extended this standard to factual Rule 12(b)(1) motions.

plaintiff's claim. *See Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) ("The caveat is that a court must leave to resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined *with an element* of the merits of the plaintiff's claim.") (emphasis added).

### B. Wrongful Death Claim

#### i. The Relevant Injury

Defendant contends that Plaintiffs' wrongful death claim is barred by the foreign country exception because Yanez died in Mexico.

Plaintiffs contend that Yanez died in the United States. Plaintiffs further contend that the foreign country exception does not apply because the negligent hiring, supervision, and training that caused Yanez's death occurred in the United States.

"Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and "rendere[ed]' itself liable." *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (citing *Richards v. United States*, 369 U.S. 1, 6 (1962)). "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment for punitive damages." 28 U.S.C. § 2674. "The provisions of this chapter and section 1346(b) of this title shall not apply to ... [a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). "[T]he FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004).

Plaintiffs' second claim is based on California Code of Civil Procedure section 377.60, which provides:

> A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled

to the property of the decedent by intestate succession.

Cal. Code Civ. Proc. § 377.60(a). "Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 'creates a new cause of action in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by *loss of a relative*, and distinct from any the deceased might have maintained had he survived.'" *Horwich v. Superior Court*, 21 Cal. 4th 272, 283 (1999) (emphasis added) (citation omitted). The Court concludes that the relevant injury for the purposes of the foreign country exception is the location of Yanez at the time of his death.

The location of Yanez at the time of his death is not an element of Plaintiffs' underlying wrongful death claim. The resolution of this factual issue does not require the Court to determine facts related to whether Yanez's death was wrongfully caused by an agent of the United States. *See Leite*, 749 F.3d at 1122. After reviewing the submissions of the parties and their supporting evidence, the Court concludes that the location of Yanez at the time of his death is not intertwined with the merits of Plaintiffs' wrongful death claim. The Court therefore has discretion to make factual findings with respect to the location of Yanez at the moment of his death. *See Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1196-97 (9th Cir. 2008) ("In general, a district court is *permitted* to resolve disputed factual issues bearing upon subject matter jurisdiction in the context of a Rule 12(b)(1) motion unless 'the jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits.'") (emphasis added) (quoting *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 735 (9th Cir. 1979)).

### ii. Analysis

Defendant contends that Yanez did not die immediately after being shot in the tree abutting the United States-Mexico primary border fence. Defendant contends that "the amount of time it would have taken for his heart to stop beating and all his vital signs to fully extinguish certainly exceeded the second or two it took for him to fall

1  from the tree or fence to his ultimate resting place on the ground[,]" and "the majority
2  of his body was in Mexico upon death." (ECF No. 43-1 at 10). Defendant submits
3  numerous exhibits and declarations in support of its position. First, Defendant submits
4  a series of five photographs, one purporting to show Yanez's body lying on the south
5  side of the United States-Mexico primary border fence and four purporting to show the
6  area on the south side of the United States-Mexico primary border fence after Yanez's
7  body was removed.[3] Second, Defendant submits Administrative Tort Claims that were
8  submitted in relation to this case and *Perez v. United States*, Southern District of
9  California Case Number 13-cv-1417. One Administrative Tort Claim states that "Mr.
10 Yanez fell back into Mexico and died at the scene." (ECF No. 43-5 at 6). Another states
11 that Yanez "was shot by a US Border Patrol agent while in his home country of
12 Mexico." (ECF No. 43-5 at 9). Third, Defendant submits two newspaper articles
13 stating that Yanez's death occurred in Mexico.

14 Fourth, Defendant submits the Declaration and survey report of Robert Reese, a
15 land surveyor, in order to establish the location of the United States-Mexico border line.
16 Robert Reese's survey report contains a photograph which purports to depict the
17 location of Yanez's body at the time of his death. The photograph purports to show
18 Yanez lying south of the United States-Mexico primary border fence, with his head
19 facing southward. A drawn yellow line, which purportedly represents the United
20 States-Mexico Border, runs directly through Yanez's waistline.[4]

21 Finally, Defendant submits the declarations of two experts who opine that Yanez
22 did not die until after he fell out of the tree and landed on the ground. Vincent Di Maio,
23 M.D. concludes that "Mr. Yanez' death on June 21, 2011 was not instantaneous." (ECF

---

[3] Defendant submits the declarations of two Supervisory Border Patrol Agents of the United States Border Patrol in order to authenticate these five photographs. (ECF Nos. 43-3, 43-4).

[4] This photograph is not the same photograph authenticated by the Supervisory Border Patrol Agents, and Defendant does not authenticate this photograph.

No. 55 at 5). "Rather, it took many seconds and possibly minutes for Mr. Yanez to die and I believe his death occurred after he landed on the ground in Mexico." *Id.* Michael Lobatz, M.D., opines that "the death of Jose Yanez Reyes in this case would not have been instantaneous." (ECF No. 55-1 at 4). Michael Lobatz concludes that "it is my opinion to a reasonable degree of medical certainty that the decedent expired while on the ground, and in the position noted in the photographs and international border survey."[5] *Id.* at 5.

Plaintiffs contend that "the homicide occurred entirely within the United States." (ECF No. 44 at 7). Plaintiffs contend that Defendant's own evidence demonstrates that Yanez's body was discovered on U.S. soil. Plaintiffs assert that Yanez was shot while standing in a tree located entirely on U.S. soil, and that he died instantly. Plaintiffs assert that Yanez fell from the tree onto the primary border fence, and that he was caught just below chest level. Plaintiffs assert that moments later, Yanez fell to the ground on the south side of the primary border fence, lying right against the south side of the fence and not extended from it. Plaintiffs submit the declarations of Plaintiff Paredes Nino, Gene Bobroff, M.D., and Suzy Kim, M.D.

Plaintiff Paredes Nino states that "[m]y son and I witnessed my husband being shot in the head." (ECF No. 48-1 at 3). Plaintiff Paredes Nino states:

> At the time that Yanez was shot and fell from the tree, he was caught just below chest level at the top of the fence. He lay there motionless on the fence for many moments. His legs dangled tightly against our side of the fence.
>
> I know my husband after years of being together with him. He was my soul mate. I know for a fact that he was dead on the top of that fence as my heart and soul felt it. At the time that he slipped down on the side of the fence where we stood in shock, he was already dead.

(ECF No. 48-1 at 3).

Gene Bobroff, M.D. states, in pertinent part:

---

[5] Michael Lobatz also opines that one of Plaintiff's experts, Gene Bobroff, M.D., "is not qualified to render opinions relating to projectile (gunshot) wounds, traumatic brain injuries, or the time of death of the decedent in this case." *Id.*

> Because instant injuries, such as the one that I have examined, create irreversible damage to parts of the brain that send and receive signals, instant brain death is quite likely.
> ...
> In this case, had a physician been present at the scene, he could have properly declared the victim as "dead" at virtually any time after the mortal wound was incurred. By all indications, he was certainly dead at the time he came to rest upon and/or against the fence. As such, if Plaintiff's allegations are to be believed, his death did – in fact – occur in the United States.

(ECF No. 48-3 at 2-3).

Suzy Kim, M.D. states, in pertinent part:

> Upon review of the autopsy report, it is not only possible that brain death occurred "instantly" upon the bullet entering the eye socket of defendant JOSE ALFREDO YANEZ REYES, it is likely to a point of certainty.
> ...
> Such a devastating head injury could not reasonably have been survived for even sparse moments. Death was instantaneous.

(ECF No. 56-6 at 2-3).[6]

In this case, it is undisputed that Yanez was shot while in a tree abutting the United States-Mexico primary border fence and positioned north of the United States-Mexico Border. Plaintiffs have presented evidence tending to show that Yanez died while still in the tree. (ECF No. 56-6). Plaintiffs have presented evidence tending to show that, even if it took some time for Yanez to die after being shot, it also took some time for Yanez to land on the ground on the south side of the United States-Mexico

---

[6] Defendant has not filed an objection to the declaration of Suzy Kim or moved to exclude the declaration of Dr. Suzy Kim. However, Defendant contends that Suzy Kim "is unqualified to render an opinion on Yanez's time of death under Federal Rule of Evidence 702." (ECF No. 60 at 3).

Federal Rule of Evidence 702 requires that an expert witness be "qualified as an expert by knowledge, skill, experience, training, or education...." Fed. R. Evid. 702. Dr. Suzy Kim's declaration provides detailed information on her medical education and experience, including working with brain injuries. The Court finds that Dr. Suzy Kim is qualified to provide an opinion on the timing of Yanez's death, resulting from a bullet wound to the brain. To the extent Defendant contends that its own experts are better qualified, any disparity in qualifications goes to the weight, rather than the admissibility, of the experts' conflicting opinions.

primary border fence. Plaintiff Paredes Nino states that Yanez first fell onto the primary border fence before sliding off and onto the ground. (ECF No. 48-1 at 3). The Court finds that Plaintiffs have come forward with sufficient evidence to support a finding that Yanez died while located on United States soil.

The Court concludes that Plaintiffs have met their burden to come forward with sufficient evidence to support a finding that the foreign country exception does not bar Plaintiffs' wrongful death claim. Plaintiffs have met their burden to overcome a factual jurisdictional attack brought pursuant to Rule 12(b)(1). *Hunter Eng'g*, 655 F.2d at 942. Plaintiffs will have the burden of proving all necessary jurisdictional facts at trial.

Defendant's motion to dismiss Plaintiffs' second claim for wrongful death is denied.

### C. Emotional Distress Claim
#### i. The Relevant Injury

Plaintiffs' third claim alleges that Plaintiffs witnessed Yanez's death and suffered "serious and severe emotional distress." (ECF No. 33 at 30). Plaintiffs' third claim proceeds on a bystander negligent infliction of emotional distress ("NIED") theory, which requires that the plaintiffs: (1) are "closely related to the injury victim"; (2) are "present at the scene of the injury-producing event at the time it occurs and are then aware that it is causing injury to the victim"; and (3) "as a result suffer emotional distress beyond that which would be anticipated in a disinterested witness." *Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989). "It is the traumatic effect of the perception of the infliction of injury on a closely related person ... that is actionable...." *Ra v. Superior Court.*, 154 Cal. App. 4th 142, 152 (2007). Because the plaintiff "may recover only for the emotional distressed suffered as a result of [the] plaintiff's presence at the injury-producing event and the contemporaneous awareness that the injury was being suffered[,] ... the cause of action accrues at the time of the injury-producing event." *Campanano v. Cal. Med. Ctr.*, 38 Cal. App. 4th 1322, 1328-29 (1995). The Court concludes that the relevant injury for the purposes of the foreign country exception is

1  Plaintiffs' alleged severe emotional distress resulting from observing Yanez's injury,
2  and occurring at the time of Yanez's injury.
3        Plaintiffs' location at the time of Yanez's death is essential to determine whether
4  the foreign country exception bars Plaintiffs' bystander NIED claim. Plaintiffs'
5  location at the time of Yanez's death is also essential to determine whether Plaintiffs'
6  may recover on a bystander NIED claim. *See Thing*, 48 Cal. 3d at 647 (requiring that
7  a bystander NIED plaintiff be "present at the scene of the injury-producing event at the
8  time it occurs"). The Court concludes that the jurisdictional question of Plaintiffs'
9  location is intertwined with the merits of Plaintiffs' bystander NIED claim. In resolving
10 this motion to dismiss, the Court is precluded from making factual findings with respect
11 to the respective locations of Plaintiffs.

### ii. Analysis

13       Defendant contend that there is no evidence that Plaintiffs witnessed Yanez's
14 death. Defendant contends that "no negligent bystander claim can survive for Ms.
15 Nino's youngest son as he was not even born at the time of the incident and therefore
16 could not have witnessed the event." (ECF No. 54 at 11).
17       Plaintiffs assert that they not only witnessed Yanez's death, but witnessed his
18 death while standing in the two foot section south of the United States-Mexico primary
19 border fence that is on United States soil. Plaintiffs submit the Declaration of Plaintiff
20 Paredes Nino, who states:

> On the early evening of June 21, 2011, I accompanied Yanez and Jose Ibarra-Murrieta ('Murrieta') in the Castillo neighborhood of Ciudad Tijuana where we regularly visited. My oldest son and I embraced Yanez just before he went through a hole in the fence in order to get to the United States. This is a solid metal fence, which I later learned is entirely in United States Territory. It has no barbed wire at the top.
> ...
> I leaned against the fence within safe distance from the events. I was worried for Yanez but was equally worried about my young son and was afraid somehow that he might be in danger. I leaned both of us tightly against the metal fence within clear view of my husband but in a place where I believed we would be safest.
> ...

> My son and I were always against the border fence at the time we witnessed the killing.

(ECF No. 48-1 at 2-3). Plaintiff Paredes Nino further states: "My youngest child was with me as well. Although unborn at the time as I was in my last term of pregnancy, I firmly believe that he perceived his father's death." *Id.* at 2.

Defendant submits a United States Border Patrol report containing Plaintiff Paredes Nino's sworn statement. According to the United States Border Patrol report, Plaintiff Paredes Nino stated that she and Yanez separated at a "cemetery on Calle Segunda" and "agreed to meet at the gas distributorship located in Colonia Castillo." (ECF No. 49-3 at 11). Plaintiff Paredes Nino stated that when she arrived at Colonia Castillo, a man told her that her "husband had suffered an accident on Internacional [avenue]." *Id.* Plaintiff Paredes Nino stated that when she arrived at Calle Internacional, she was informed that Yanez was "deceased." *Id.* at 11-12.

Plaintiffs have submitted evidence tending to show that they witnessed Yanez's death from a vantage point on United States soil. The Court concludes that Plaintiffs have met their burden to come forward with sufficient evidence to support a finding that the foreign country exception does not bar Plaintiffs' emotional distress claim. Plaintiffs have met their burden to overcome a factual jurisdictional attack brought pursuant to Rule 12(b)(1).[7] *Hunter Eng'g*, 655 F.2d at 942. Plaintiffs will have the burden of proving all necessary jurisdictional facts at trial.

Defendant's motion to dismiss Plaintiffs' emotional distress claim is denied.

---

[7] Defendant's contention—that Plaintiff Paredes Nino's youngest son cannot bring a bystander emotional distress claim because he was only present at the scene of Yanez's death as a fetus—is not a jurisdictional contention. Federal Rule of Civil Procedure 12(g)(2) provides: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Federal Rule 12(h)(2) provides: "Failure to state a claim upon which relief can be granted ... may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). Defendant could have raised this issue in its motion to dismiss the SAC for failure to state a claim. *See* ECF No. 34. The pending motion is not brought pursuant to Rule 12(c). Accordingly, the Court expresses no opinion on whether a person may bring a bystander emotional distress claim under California law.

## IV. Conclusion

IT IS HEREBY ORDERED that the remaining portion of Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 43), related to the foreign country exception of the FTCA, is DENIED.

DATED: August 25, 2015

**WILLIAM Q. HAYES**
United States District Judge